1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                              No. CIV 2:11-cv-0879-GEB-JFM

    vs.

APPROX. $156,000.00 IN U.S. CURRENCY,
*et al.*,

        Defendants.                        <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Before the court is plaintiff United States of America's July 15, 2011 motion for
default judgment, requesting (1) entry of default judgment against the interests of Lily Leticia
Garcia ("L. Garcia"), Carlos Garcia ("C. Garcia"), Juan Manuel Hernandez ("Hernandez"),
Antenogenes Gonzalez ("Gonzalez"), Yesenia Placencia ("Placencia") and Samuel Zepeda
Rodriguez ("Rodriguez") in approximately $156,00.00 and $2,839.00 in U.S. currency ("the
defendant currency") and (2) entry of final judgment of forfeiture vesting plaintiff all right, title
and interest in the defendant currency.

FACTUAL BACKGROUND

        On October 1, 2010, agents of the Butte Interagency Narcotics Task Force
("BINTF") and Bureau of Narcotics Enforcement ("BNF") used a confidential informant ("CI")

1   to conduct an undercover drug purchase from L. Garcia at 3156 Esplanada #265, Chico,

2   California.  Compl. at 2.  The attempt was unsuccessful.  Id.

3          On October 5, 2010, the CI contacted L. Garcia and requested Oxycontin.

4   Compl. at 2.  L. Garcia said she did not have any for sale, but would be able to get some.  Id.

5   The CI reported purchasing two Oxycontin 80-mg prescription pills and approximately 2.4

6   grams of marijuana.  Id.  The CI also reported that L. Garcia showed him/her a large marijuana

7   grow in the backyard.  Id.

8          On October 11, 2010, the CI again successfully contacted L. Garcia at her

9   residence.  Compl. at 2.  The CI was equipped with an electronic recording device, a wireless

10  transmitter, a video camera and cash.  Id.  The CI reported that he/she was able to successfully

11  purchase one prescription 80-mg Oxycontin pill, two prescription 30-mg Oxycontin /

12  Hydrochloride pills and approximately 2.6 grams of marijuana.  Id. at 2-3.  The CI reported that

13  L. Garcia agreed to sell marijuana from the marijuana plants growing in the backyard.  Id.

14        On October 28, 2010, agents from the BNE and BINTF served a search warrant at

15  L. Garcia's residence at 3156 Esplanade # 265, Chico, California.  Compl. at 3.  L. Garcia,

16  Gonzalez, Hernandez and two minors were present during the search.  Id.  L. Garcia told the

17  agents that her husband, C. Garcia, also lives there but was not present during the search.  Id.

18        During the search of the residence, the agents found, inter alia, three large plastic

19  bags containing approximately 6.5 pounds of marijuana, 19 plastic bags containing

20  approximately 10 pounds of marijuana, nine small bags containing approximately 106 grams of

21  marijuana, and loose marijuana bud on the bathroom counter.  Compl. at 3-4.  Additionally, the

22  agents found 6 quart-sized jars containing approximately 253 grams of marijuana and digital

23  scales on a bedroom closet shelf.  Id.  In the bedroom, the agents found 15 plastic bags

24  containing approximately $150,100.00 in currency in a dresser drawer, and $5,900.00 in

25  currency was found in a second dresser drawer, for a total of $156,00.00 in currency.  Id.  The

26  agents also found $2,839.00 in currency inside of L. Garcia's purse, 39 grams of hashish, loose

1  marijuana on the kitchen counter, and 21 foil packages of marijuana in the cupboard.  Id.   At the

2  exterior of the residence, the agents found two marijuana smoking devices, one of which was

3  within reach of L. Garcia's two young children.  Id. at 4.

4          A BNE agent spoke with L. Garcia during the search and asked if drugs were

5  being sold out of the house.  Compl. at 4-5.  L. Garcia denied drug trafficking.  Id.  She asserted

6  that the family lived on $1,200.00 of government-support money a month, which she deposits in

7  the bank.  Id.  When asked about the large sums of money found at the residence, L. Garcia

8  responded that she "just keeps the money there."  Id.

9          L. Garcia's daughter, Placencia and her boyfriend, Rodriguez, approached the

10  residence during the search.  Compl. at 5.  Placencia represented that she was unaware of drug

11  trafficking at her mother's residence.  Id.  Placencia told a BINTF agent that she, L. Garcia, her

12  brother and her uncle have marijuana recommendations and that the marijuana plants in L.

13  Garcia's backyard belong to them.  Id.

14          The Butte County District Attorney charged L. Garcia with violations of

15  California Health and Safety Code[1] section 11352(a) (transportation of a controlled substance);

16  section 11360(a) (transportation of marijuana); section 11351 (possession of a controlled

17  substance for sale); section 11358 (cultivation of marijuana); section 11359 (possession of

18  marijuana for sale); and section 273a(a) (child endangerment).  Compl. at 6.  C. Garcia was

19  charged with the same violations as Garcia with the exception of section 11359.  Id.  The

20  criminal case is still pending in the Butte County Superior Court.  Id.

21                          PROCEDURAL BACKGROUND

22          On March 31, 2011, plaintiff filed the present complaint for forfeiture in rem

23  against the defendant currency.  On April 4, 2011, a warrant for arrest of articles in rem was

24  issued.  On April 6, 2011, the warrant was executed.

25  _____

26      [1]  All future statutory references will be to the California Health and Safety Code unless
noted otherwise.

Service was accomplished in the following manner:

A.   *L. Garcia and C. Garcia*

On April 5, 2011, plaintiff mailed copies of the complaint, application and order for publication, order regarding clerk's issuance of warrant for arrest, warrant for arrest, order setting status conference, notice of availability of a magistrate judge and notice of forfeiture action ("the service documents") to L. Garcia and C. Garcia at the Butte County Jail, 35 County Center Drive, Oroville, California 95965 by first class mail and certified mail number 7008 1140 0001 8038 6951.  See Butler Decl. at ¶¶ 3-6, Exs. A-D.  The certified mail form was signed by T. Hoffman.  Id., Ex. B.  Plaintiff also mailed the service documents to John Kucera, the attorney for L. Garcia and C. Garcia.[2]  Id., Ex. C.  The certified mail form was signed on April 6, 2011. Id.  Finally, on April 13, 2011, the United States Marshal Service personally served copies of the service documents on L. Garcia and C. Garcia through correctional technician T. Hoffman at Butte County Jail.  Id., Ex. D.

B.   *Juan Manual Hernandez*

On April 5, 2011, plaintiff mailed copies of the service documents to Hernandez at 3156 Esplanade # 265 Chico, California 95973 by first class mail and certified mail number 7008 1140 0001 8038 6968.  See Butler Decl. at ¶¶ 7-8, Ex. E.  The mail was returned to plaintiff's office marked "unclaimed, return to sender."  See id.  On April 13, 2011, the United States Marshal Service personally served copies of the service documents on Hernandez at 3156 Esplanade # 265, Chico, California 95973.  Id., Ex. F.

C.   *Gonzalez*

On April 5, 2011, plaintiff mailed copies of the service documents to Gonzalez at 3156 Esplanade # 265, Chico, California 95973 by first class mail and certified mail number 7008 1140 0001 8038 6845.  See Butler Decl. at ¶¶ 9-10, Ex. G.  The mail was returned to

---

[2]  At least as of June 14, 2011, Mr. Kucera is no longer representing L. Garcia and C. Garcia.  See Khasigian Decl. ¶ 4, Ex. B.

1    plaintiff's office marked "unclaimed, return to sender."  See id.  On April 13, 2011, the United

2    States Marshal Service attempted to personally serve copies of the service documents on

3    Gonzalez at 3156 Esplanade # 265, Chico, California 95973.  Id. ¶ 10, Ex. F.  The address was

4    vacated, but service was accepted by Placencia at 3156 Esplanade # 275, Chico, California

5    95973.  Id., Ex. H.

6         D.    *Placencia*

7              On April 5, 2011, plaintiff mailed copies of the service documents to Placencia at

8    3156 Esplanade # 275, Chico, California 95973 by first class mail and certified mail number

9    7008 1140 0001 8038 6975.  See Butler Decl. at ¶¶ 11-12, Ex. I.  The certified mail form was

10   signed by Vidal Hernandez on April 6, 2011.  Id.  On April 13, 2011, the United States Marshal

11   Service personally served copies of the service documents on Placencia at 3156 Esplanade #

12   275, Chico, California 95973.  Id., Ex. J.

13        E.    *Rodriguez*

14             On April 5, 2011, plaintiff mailed copies of the service documents to Rodriguez at

15   3156 Esplanade # 275, Chico, California 95973 by first class mail and certified mail number

16   7008 1140 0001 8038 6982.  See Butler Decl. at ¶¶ 13-14, Ex. K.  The certified mail form was

17   signed by Vidal Hernandez on April 6, 2011.  Id.  On April 13, 2011, the United States Marshal

18   Service attempted to personally serve copies of the service documents on Rodriguez at 3156

19   Esplanade # 275, Chico, California 95973.  Id. ¶ 14, Ex. L.  The attempt was unsuccessful.  Id.

20   On April 30, 2011, the Butte County Sheriff's Office personally served copies of the service

21   documents on Rodriguez at 64 Artesia Drive, Chico, California.  Id. ¶ 15, Ex. M.

22             On May 3, 2011, the undersigned authorized publication of the forfeiture action

23   via the internet forfeiture website (www.forfeiture.gov) for at least thirty days.  According to

24   plaintiff's Declaration of Publication (Doc. No. 14), a Notice of Civil Forfeiture was published

25   on the official government internet site (www.forfeiture.gov) for thirty days beginning on May 5,

26   2011.  To date, no claim or answer has been filed on behalf of the potential claimants.

1    On May 20, 2011, plaintiff moved for default as to Placencia and Rodriguez.  On

2  May 23, 2011, entry of default was entered against Placencia and Rodriguez.  On June 7, 2011,

3  plaintiff moved for default as to Gonzalez and Hernandez.  Also on June 7, 2011, entry of default

4  was entered as to Gonzalez and Hernandez.  Finally, on June 16, 2011, plaintiff moved for

5  default as to L. Garcia and C. Garcia.  On June 17, 2011, entry of default was entered as to L.

6  Garcia and C. Garcia.

7    On July 15, 2011, plaintiff filed the instant motion for default judgment against

8  L. Garcia, C. Garcia, Hernandez, Gonzalez, Placencia and Rodriguez.  No opposition has been

9  filed by or on behalf of any of these individuals.

10    LEGAL STANDARD

11    A court has the discretion to enter a default judgment  against one who is not an

12  infant, incompetent, or member of the armed services where the claim is for an amount that is

13  not certain on the face of the claim and where (1) the defendant has been served with the claim;

14  (2) the defendant's default has been entered for failure to appear; (3) if the defendant has

15  appeared in the action, the defendant has been served with written notice of the application for

16  judgment at least three days before the hearing on the application; and, (4) the court has

17  undertaken any necessary and proper investigation or hearing in order to enter judgment or carry

18  it into effect.  Fed. R. Civ. P. 55(b); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388,

19  1392 (9th Cir. 1988).  Factors that may be considered by courts in exercising discretion as to the

20  entry of a default judgment and as to setting aside a default include the nature and extent of the

21  delay, Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); the possibility of prejudice to

22  the plaintiff, Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); the merits of plaintiff's

23  substantive claim, id.; the sufficiency of the allegations in the complaint to support judgment,

24  Alan Neuman Productions, Inc., 862 F.2d at 1392; the amount in controversy, Eitel v. McCool,

25  /////

26  /////

6

782 F.2d at 1471-72; the possibility of a dispute concerning material facts, id.; whether the default was due to excusable neglect, id.; and, the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id.

With respect to default judgments in proceedings that are in rem actions for forfeiture, both the general Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supp. R.") apply, but the latter rules prevail if there is an inconsistency.  Supp. R. A(1).  Supp. R. G(1) provides that the rule governs a forfeiture action in rem arising from a federal statute; to the extent that Rule G does not address an issue, Supp. Rules C and E also apply.  Supplemental Rule G, which took effect on December 1, 2006, incorporates a common-sense approach to notice grounded in defined and recognized principles of due process of law.  Supp. Rule G, Adv. Comm. Note on 2006 Adoption.  The Advisory Committee Note indicates that the rule was added to bring together the central procedures governing civil forfeiture actions; it also states that the rule generally applies to actions governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) as well as those excluded from it; thus, the intended scope of application is very broad.  The rule permits flexibility as to the time of service of any warrant and supplemental process.  Id.  The provisions for notice incorporate the traditional means of publication and adopt the general principle that notice should be effectuated by means reasonably calculated to reach potential claimants at a cost reasonable in the circumstances, and actual notice precludes a challenge to the government's failure to comply with the specific requirements of the rule set forth in Rule G(4)(b).  Id.

ANALYSIS

1.    Judgment Sought

The court concludes that the notice given of the judgment sought satisfied Fed. R. Civ. P. 55(d) and 54(c), which require that a judgment by default shall not be different in kind from the relief sought, or exceed in amount that prayed for, in the demand for judgment. Plaintiff expressly sought in the complaint the types of relief sought by the instant application for

1  default judgment, including a judgment of forfeiture of the defendant currency to the plaintiff

2  United States.

3  2.      Default and Entry of Default

4          The declarations and the court's docket demonstrate that no person or entity made

5  a claim or answered the complaint within the requisite thirty-day period for filing a claim of 18

6  U.S.C. § 983(a)(4)(A) and Supp. R. G(5), and/or within the twenty-day period set forth in Supp.

7  R. G(5) for filing an answer thereafter.  Therefore, the Clerk appropriately entered the default of

8  potential claimants Placencia and Rodriguez on May 23, 2011; Gonzalez and Hernandez on June

9  7, 2011; and L. Garcia and C. Garcia on June 17, 2011.

10  3.      Notice

11          The Declaration of Publication by plaintiff filed on June 6, 2011 establishes that a

12  notice with the contents required by Supp. R. G(4)(a) was published on the official government

13  internet site for thirty consecutive days as required by Supp. R. G(4)(a)(iv)©.

14          As to the potential claimants, the declaration of Betty Butler and the Marshal's

15  returns of service establishes that individuals were served with the pertinent documents as set

16  forth <u>supra</u>.  Thus, the notice complied with the requirements of Supp. R. G(4)(b).

17          The undersigned concludes that plaintiff has demonstrated that it has given notice

18  by publication and the notice required to be given to potential claimants by Rule G(4).

19  4.      Legal Sufficiency of the Complaint

20          a.      Legal Standard

21          A default judgment  generally bars the defaulting party from disputing the facts

22  alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state

23  a claim.  <u>Alan Neuman Productions, Inc.</u>, 862 F.2d at 1392.  Thus, well pleaded factual

24  allegations, except as to damages, are taken as true; however, necessary facts not contained in

25  the pleadings, and claims which are legally insufficient, are not established by default.  <u>Cripps v.</u>

26  /////

1   <u>Life Ins. Co. of North America</u>, 980 F.2d 1261, 1267 (9th Cir. 1992); <u>TeleVideo Systems, Inc. v.</u>

2   <u>Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987).

3          Under the CAFRA, which applies to this case, the government must prove by a

4   preponderance of evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).

5   Further, if the government's theory of forfeiture is that the property was used to commit or

6   facilitate the commission of a criminal offense, or was involved in the commission of a criminal

7   offense, the government shall establish that there was a substantial connection between the

8   property and the offense.  § 983(c)(3).

9          Supp. Rule G(2) requires that the complaint in a forfeiture action in rem arising

10  from a federal statute be verified; state the grounds for subject-matter jurisdiction, in rem

11  jurisdiction over the defendant property, and venue; describe the property with reasonable

12  particularity; identify the statute under which the forfeiture action is brought; and state

13  sufficiently detailed facts to support a reasonable belief that the government will be able to meet

14  its burden of proof at trial.

15          b.     The Complaint

16          The complaint filed in this action was verified.  Compl. at 8.

17          The bases for jurisdiction are identified as 28 U.S.C. §§ 1345 and 1355

18  (jurisdiction of civil proceedings commenced by the United States or an agency or officer

19  thereof, and of actions to recover or enforce penalties or forfeitures under acts of Congress,

20  respectively) and 21 U.S.C. § 881(a)(6) (subjecting to forfeiture, among other things, all things

21  of value furnished or intended to be furnished by any person in exchange for a controlled

22  substance or listed chemical, and all proceeds traceable to such an exchange).  Compl. at 1, 6.

23          The bases of venue are identified as 28 U.S.C. §§ 1355(b) (placing venue for a

24  civil forfeiture action where the acts giving rise to the forfeiture occurred) and 1395 (placing

25  venue for a civil forfeiture proceeding where the property is found).  Compl. at 1.

26          The property is described with reasonable particularity.

9

It is stated that plaintiff proceeds pursuant to 21 U.S.C. § 881(a)(6), and that the defendant property, seized in October 2010 in Chico, California, constitutes money or things of value furnished or intended to be furnished in exchange for a controlled substance of listed chemical, proceeds traceable to such an exchange, and/or all moneys used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 *et seq.*  Compl. at 6-7.

In the complaint there are alleged sufficiently detailed facts to support a reasonable belief that the government would be able to meet its burden of proof at trial.  The complaint detailed an ongoing investigation into the purchase of marijuana L. Garcia by a CI.  Following a final purchase on October 11, 2010, a search warrant was executed at L. Garcia's residence.  There, agents located the defendant currency, in addition to, <u>inter alia</u>, drug paraphernalia and multiple pounds of marijuana.

These facts support a reasonable inference that the defendant currency was subject to forfeiture as proceeds/property traceable to proceeds or as property intended to be used to facilitate other violations.  The totality of the circumstances reflects that a substantial connection between the property and the related drug offenses was demonstrated.

5.      Status of Potential Claimants and Discretionary Factors

Here, no one has claimed an interest in the defendant currency or otherwise responded to the complaint despite adequate notice.  It does not appear that there is any risk of mistake or excusable neglect on the part of anyone with a potential interest in the property or of a dispute as to a material fact essential to the government's case.  No just cause for delay appears.  There does not appear to be any reason why the general policy in favor of a decision on the merits would warrant refusing to enter the requested default judgment.

Based thereon, the court finds that plaintiff has shown its entitlement to a default judgment of forfeiture.

/////

/////

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that

1.  Plaintiff's July 15, 2011 motion for default judgment be granted; and

2.  Plaintiff is entitled to, and the Clerk be directed to enter, a judgment that:

A.  The interest/s of L. Garcia, C. Garcia, Hernandez, Gonzalez, Placencia and Rodriguez in the defendant property are condemned and forfeited to the United States of America; and

B.  The right, title, and interest of all potential claimants in the defendant property, including but not limited to L. Garcia, C. Garcia, Hernandez, Gonzalez, Placencia and Rodriguez, are forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6), and are vested in the United States; and,

C.  All persons claiming any right, title, or interest in or to the defendant property have defaulted and no longer have any right, title, or interest in the defendant property whatsoever; and,

3. The Clerk of Court enter final judgment of forfeiture for plaintiff.

These findings and recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) court days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).

/////

/////

1  The parties are advised that failure to file objections within the specified time may waive the

2  right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: September 8, 2011.

4

5

6                                        UNITED STATES MAGISTRATE JUDGE

7  /014;usa0879.def

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26